UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
-------------------------------------------------------X
MARGARET FROMM                          :    Civil Action No.:
                                        :    **COMPLAINT**
            Plaintiff,                  :    to remedy discrimination in
                                        :    Violation of the ADEA
      v.                                :
DELTA AIR LINES, INC.,                  :
                                        :
            Defendant.                  :    **Jury Trial Demanded**
-------------------------------------------------------X

Plaintiff, Margaret Fromm, by and through her undersigned attorneys, complaining of Defendant, Delta Air Lines, Inc., brings the instant action requesting judgment in her favor, and against Defendant, and in support thereof, allege, upon information and belief, as follows:

## NATURE OF ACTION

1. Plaintiff, Margaret Fromm, a former employee of Delta Air Lines brings this lawsuit against her employer, Delta, to remedy discrimination on the basis of her age.

## PARTIES

2. Plaintiff, Margaret Fromm is an adult individual residing at 7202 West 114th St Circle Minneapolis, MN 55438. At all times material hereto, Plaintiff was employed by Defendant, Delta Air Lines, or their predecessor Northwest airlines as a as a Flight Attendant for the first 16 years and as a Field Service Manager (FSM) for the remaining 11 years, and was always based out of Minneapolis, MN.

3. Delta Air Lines, Inc. is a corporation duly organized and existing under the laws of the State of Delaware, with headquarters in Atlanta, Georgia. Delta employs more than 80,000 employees worldwide and, as of October, 2016, flew to 54 countries on 6 continents. In 2013, Delta was the world's largest airline in terms of passengers, carrying 120.6 million passengers.

## JURISDICTION AND VENUE

4. The above paragraphs are incorporated herein by reference.

5. Jurisdiction in this Honorable Court is based on federal question 28 U.S.C. §1331; supplemental jurisdiction over state law claims is granted by 28 U.S.C. §1367.

6. Venue is proper in the District of Minnesota, as the facts and transactions involved in the discrimination complained of herein occurred in large part in this judicial district.

## STATEMENT OF FACTS

7. The above paragraphs are incorporated herein by reference.

8. Delta, in a number of unlawful, intimidating and discriminatory acts, created a discriminatory and hostile work environment for Plaintiff. Plaintiff has been employed by Delta since on or about April 1990. A loyal employee for approximately 27 years, Plaintiff always provided her customers with exceptional service.

9. Sometime in May of 2017 Plaintiff was selected to be on the 2017 Chairman's Club Committee which was great honor and meant she would be part of a team created to choose those employees in her department who would receive Delta's highest awarded.

10. During the third week of May 2017 the committee began traveling to Atlanta every Monday and returning Thursday evening and during this time Plaintiff was expected to keep up with her new Chairman's Club duties as well as her FSM duties which was exhausting and which she shared with her manager Steve Jung.

11. On June 1, 2017 Plaintiff received a call from Steve Jung (Steve) requesting an investigation be opened regarding Diane Ford's policy violation related to union advocacy on the aircraft.

12. Plaintiff's recommendation, based on Ford's and other crew members' statements, was that Ford be issued an informal verbal coaching by documenting the conversation and providing Diane with a copy of the policy.

13. Ignoring Plaintiff's recommendation Delta's HR representative, Linda Nimpson (Linda), continued the investigation for weeks in violation of Delta policy that investigations be closed within 21 days.

14. Both Steve Jung and Base Director, Sarah Tronnes (Sarah), believed Ford's version of the incident.

15. Sometime in mid-July Sarah Tronnes told Plaintiff that HR was intent on making an example of Diane and that she did not agree with what was happening to Diane and would not sign off on any discipline.

16. On or around July 17, 2017, while walking to a transport van Plaintiff discussed the Ford matter with MSP-based flight attendant Richard Schutz (Richard), who had noticed that Plaintiff was upset over something.

17. At no time did Plaintiff give Diane's name during this discussion and only vaguely discussed that there had been some performance development discipline matter that Plaintiff had been asked to give to a member of her team and that she did not agree with it.

18. The following Monday July, 24, 2017, Plaintiff had a meeting with manager Steve Jung before returning to Atlanta.

19. At the meeting the Base Manager, Shannon, was brought in to take notes and Plaintiff was questioned by Steve Jung about the conversation she had previously had with Richard Schutz during the July 17, 2017 van ride.

20. Plaintiff stated that she could not remember the specific conversation and that she had 8 van trips each week.

21. At some point during the conversation it was revealed to Plaintiff that a director from another department had been in the van during the alleged conversation and overheard Plaintiff expressing her disagreement regarding some performance development matter that her leadership had issued.

22. During this meeting Plaintiff did not realize they were discussing the conversation she had with Richard while walking to the van.

23. Following the meeting Plaintiff was asked to write a statement regarding her side of the story and then was told to go home.

24. The next day, July 26, 2017, Plaintiff returned for further questioning and was suspended without pay and asked to go home and again write another statement.

25. In a later meeting with Sarah Tronnes and Linda Nimpson Plaintiff was told that during the conversation she had with Richard she allegedly stated she disagreed with the discipline her leaders wanted to give to her team member and specifically named Sarah and Shannon as being the leaders that she did not agree with and further asked Richard not to say anything to anyone.

26. Plaintiff denies that, during her discussion with Richard on their way to the van, she ever mentioned Diane, Shannon or Sarah's name and further denies that she ever asked Richard not to tell anyone.

27. On August 16, 2017 Plaintiff met with Ravi, Sara and Linda (via speaker phone) at the base and was then terminated from her employment with Delta.

28. The firing of Plaintiff was an act of discrimination, with no valid business purpose or justification.

29. Delta used a pretext of Plaintiff's alleged policy violation related to leader confidentiality, but this is a pretext for discrimination because Plaintiff had not specifically stated Diane Ford's name nor the names of the leaders whose decision Plaintiff disagreed with. The real reason for Plaintiff's termination was part of Delta's pattern and intent to discriminate against, discipline, discourage and terminate Plaintiff due to her age of 68 years old.

30. Upon information and belief, Delta Air Lines has engaged in an illegal pattern and practice of intentionally discriminating and retaliating against senior employees based upon their age.

31. Delta has publicly stated that it is turning its attention to millennials, those born from the early 1980's to the late 1990's. Delta's CEO, Edward Bastian, has said by 2020, half of Delta's customers will be millennials and it is anticipated that Delta's employees will mirror the same balance.

32. Upon information and belief, Delta has engaged in a pattern and practice of using pretextual, embellished or untruthful allegations to terminate flight attendants who are over 40 years old.

33. Bastian stated during a 2016 interview, "There's no question that the face of Delta's employees is changing, it's becoming younger…. We have got to stay ahead of that change and make certain our product and our service offerings are fresh."  Delta News Hub, May 2, 2016.

34. Upon information and belief Delta's website, called DeltaNet -- highlighted it's commitment to hiring a younger workforce, with a large headline: "Delta commits to hire young American workers for 'First Job'."

35. Upon information and belief, Delta has no plans of expanding its total number of flight attendants.

36. Delta is not in a position to hire a large number of employees to fulfill their millennial goals without removing a significant number of Delta's senior employee pool. This means that Delta's older employees will have to leave their employment either voluntarily or involuntarily.

37. In 2017, Plaintiff's salary was approximately $84,000 per year plus profit sharing for a total of $102,000. Upon information and belief, Delta could hire at least 3-4 first time FSM's for the same amount of money they were paying Plaintiff yearly.

38. In 2017, Delta released a reality show called "Earning Our Wings" about becoming a flight attendant. Upon information and belief, one of the motivations for this show was to attract younger "millennial" employee applicants.

39. Upon information and belief, Delta has a de facto policy to terminate or discipline older employees due to perceived or manufactured infractions of company rules.

40. Upon information and belief, from publicly available sources:

   a. Delta's most recent incoming classes of flight attendants have been predominantly under 30 years old.

   b. Upon information and belief, a Delta flight attendant based in Detroit, "Employee A", who flies throughout the system, observed that the ages of flight attendants was going down, mostly because incoming classes were predominantly young people.

   c. Employee A felt that it was obvious that Delta was getting rid of older flight attendants so they could be replaced by younger ones.

   d. Employee A learned of multiple cases where older Delta employees were terminated for false reasons or trivial reasons that would not have warranted termination in past years.

e. Employee A is over 40 years old and began working as a flight attendant for Northwest Airlines before its merger with Delta in 1979. Based upon her observation (and pursuant to the flight attendant seniority lists that she has seen) the total number of flight attendants in the employ of Delta Air Lines has not been expanding -- yet young flight attendants now dominate the incoming ranks. Employee A further stated this means that Delta is replacing older flight attendants in increments. Older flight attendants are being phased out -- by forced retirement and involuntary termination -- in favor of younger flight attendants, according to said Employee A.

f. The EEOC's Miami office is investigating claims of age discrimination by Delta Air Lines in which the corporation fired or forced out older flight attendants. The victims have claimed false, exaggerated or pretextual reasons for the adverse actions against them.

g. Another Delta Flight Attendant, "Employee B," who was first hired as a flight attendant in 1978 with Northwest Airlines prior to its merger with Delta, is 74 years old. According to her sworn EEOC charge, she was forced to retire for an alleged violation of company policy, which alleged violation "had not caused the termination of younger employees.  Thus, I was forced to resign (retire) because of my age."  Employee B's EEOC charge included a formal charge of age discrimination.

h. Employee B's sworn EEOC charge, stated, further, that, "I think there is a provable trend at Delta to rejuvenate its work force, i.e. make it younger.  What I mean by that is that it is terminating (or forcing termination of) older employees

upon false or trivial accusations or at least accusations that previously would have warranted lesser discipline, such as letters of reprimand and/or suspensions. What this means is that older employees are being let go or forced out and replaced with younger employees earning fractionally less than their predecessors. Delta is even resorting to false or exaggerated allegations." Thus, the complainant identified age discrimination and pretext in the reasons selected to fire her.

i. According to the EEOC charge of another Delta flight attendant, "Employee C", he was over 40 years old when fired from Delta and alleged in his EEOC charge that the company committed age discrimination against him. He claimed that, "there is a provable trend at Delta to 'rejuvenate' its work force, i.e. make it younger. What I mean by that is that it is terminating older employees upon false or trivial accusations or at least accusations that previously would have warranted lesser discipline, such as letters or reprimand and/or suspensions." Thus, the complainant identified age discrimination and pretext in the reasons selected to fire him.

j. According to another EEOC charge, with similar accusations, Delta is getting rid of older flight attendants to make room for young ones, thus, age discrimination had been committed, according to the sworn EEOC charge. The complainant was 67 years old when fired for reasons that he claimed under oath would not have caused termination previously. This was done to make room for young flight attendants. He had worked for Delta and Northwest Airlines as a flight

    attendant since 1987.  Thus, the complainant identified age discrimination and pretext in the reasons selected to fire him.

k. Upon information and belief, according to allegations in federal court pleadings, several other Delta flight attendants have also noted the trend of getting rid of older flight attendants to be replaced by young ones.  One stated that all new hires as flight attendants are in their mid-20s and early 30s.  Another stated that Delta Air Lines was obviously moving to terminate its older flight attendants to make room for new ones who were completing their training classes.  Trivial reasons were selected to force out older flight attendants, which reasons would not have caused significant discipline at all in prior years, they informed plaintiff.

41. The firing of Plaintiff was pretextual. Plaintiff had an exceptional work record, and never violated any Delta policies. She had a great reputation with her customers.  Upon information and belief, over the past three years Delta has replaced many Minneapolis FSM's with someone under the age of 40. Plaintiff's termination was pretextual for age discrimination.

42. Plaintiff has exhausted said remedies after filing with the EEOC and other state agencies and has obtained a right to sue.  This action is filed within 90 days of the issuance of Plaintiff's right to sue letter from the EEOC.

## STATEMENT OF CLAIMS

### COUNT I.
### AGE DISCRIMINATION

43. The foregoing paragraphs are incorporated herein by reference.

44. The foregoing adverse employment actions taken against Plaintiffs, constituted age discrimination under the ADEA.

45. Delta conduct constitutes unlawful discrimination against Plaintiff in violation of her rights under the ADEA, 29 U.S.C. § 621 *et seq.*

46. Delta acted purposely and with malice with the intent to injure Plaintiff.

47. The foregoing actions of Defendant created a hostile work environment that was severe and pervasive and that altered the terms and conditions of Plaintiff's employment.

48. As a direct and proximate result of Delta's actions and unlawful retaliation against Plaintiff, Plaintiff has suffered mental and emotional damages, Plaintiff has incurred, and will continue to incur, substantial economic damages.

## COUNT II.
## VIOLATION OF THE MINNESOTA AGE DISCRIMIMINATION ACT

49. The above paragraphs are incorporated herein by reference.

50. The foregoing adverse employment actions taken against Plaintiff, constituted age discrimination under the Minnesota Human Rights Act.

51. Delta's conduct constitutes unlawful discrimination against Plaintiff in violation of her rights under MS State. Sec. 363A.01, et seq.

52. As a result of Delta's discriminatory acts, Plaintiff has suffered and shall continue to suffer monetary damages and damages for mental suffering and humiliation unless and until the Court grants relief.

## COUNT III.
## HOSTILE WORK ENVIRONMENT

53. The above paragraphs are incorporated herein by reference.

54. The foregoing actions of Defendant created a hostile work environment that was severe and pervasive and that altered the terms and conditions of Plaintiff's employment.

## COUNT IV.
## VIOLATION OF TITLE VII.

55. The above paragraphs are hereby incorporated herein by reference.

56. By committing the foregoing acts of discrimination against Plaintiff, Defendant has violated Title VII.

57. Said violations were done with malice and/or reckless indifference and warrant the imposition of punitive damages.

58. As a direct and proximate result of Defendant violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorney's fees and costs.

59. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant discriminatory acts unless and until this Court grants the relief requested herein.

## COUNT V.
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

60. The above paragraphs are incorporated herein by reference.

61. By engaging in the aforesaid conduct, the acts and practices of Defendant violated the employment agreement between the parties in violation of Public Policy.

62. The above acts and practices of Defendant's constitutes unlawful retaliatory and discriminatory employment practices in violation of Public Policy

63. As a result of Defendants' discriminatory and retaliatory acts, Plaintiff has suffered and shall continue to suffer monetary damages and damages for mental suffering and humiliation unless and until the Court grants relief.

64. This claim is filed under Minnesota State Laws.

65. No previous application has been made for the relief requested herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter judgment in favor of Plaintiff and against Delta, and Order the following relief:

a. A declaratory judgment declaring that Delta has illegally discriminated against Plaintiff;

b. Reinstatement of Plaintiff's employment;

c. Declaring the acts and practices complained of herein are in violation of Title VII, the ADEA, the Minnesota Human Rights Act and Public Policy;

d. Enjoining and permanently restraining the aforesaid violations;

e. Make whole order for Plaintiff, both in terms of pay, compensation, benefits, terms and conditions and emoluments of employment, including but not limited to back pay, front pay, and any pay differential;

f. Payment of compensatory and punitive damages, to Plaintiff in an amount to be determined at trial; and,

g. An award of Plaintiff's attorneys' fees and costs of suit as provided by Title VII, the ADEA, the Minnesota Human Rights Act and Public Policy.

h. Such other relief as this honorable Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a jury trial as to all issues so triable herein.

[remainder of page left intentionally blank]

DATED this 16th day of November, 2018.

                              BRADSHAW & BRYANT, PLLC

By:    /s/ Michael A. Bryant
       Michael A. Bryant, #218583
       Attorney for Plaintiff
       1505 Division Street
       Waite Park, MN 56387
       mike@minnesotapersonalinjury.com
       (320) 259-5414

       MILDENBERG LAW FIRM
       Brian R. Mildenberg, Esq.
       PA Attorney ID No. 84861
       1735 Market St.,
       Suite 3750
       Philadelphia, PA 19103
       215-545-4870
       Fax: 215-545-4871
       brian@mildenberglaw.com
       www.MildenbergLaw.com
       Attorney for Plaintiffs
       (*pro hac vice* pending)

       WEISBERG LAW
       Matthew B. Weisberg, Esq.
       PA Attorney ID No. 85570
       7 South Morton Ave
       Morton, PA 19070
       610-690-0801
       Fax: 610-690-0880
       Attorney for Plaintiffs
       (*pro hac vice* pending)