**UNITED STATES DISTRICT JUDGE**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Margaret Fromm, | Case No. 18-cv-3197 (MJD/SER) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Delta Air Lines, Inc., | |
| Defendant. | |

---

This matter is before the Court on Defendant's Motion to Dismiss Amended Complaint. (ECF No. 28). This motion was referred to the undersigned for a report and recommendation under 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1. (ECF No. 33). This Court recommends the motion be granted and this matter be dismissed.

## I.   FROMM'S COMPLAINT & PROCEDURAL BACKGROUND

Plaintiff Margaret Fromm was employed from April 1990 by Defendant Delta Air Lines, Inc. and its predecessor Northwest Airlines, as a flight attendant for 16 years and then as a field service manager ("FSM") for 11 years. (Am. Compl. ¶¶ 2, 8). Fromm was based in Minneapolis, Minnesota for the entirety of her 27 years with Delta and Northwest. (Am. Compl. ¶ 2). In 2017, Fromm made $84,000 per year plus profit sharing that brought her total annual earnings to $102,000. (Am. Compl. ¶ 40).

In May 2017, Fromm was selected to serve on the 2017 Chairman's Club Committee ("the Committee") which was created to select recipients for Delta's highest award. (Am. Compl. ¶ 9). Starting the third week of May 2017, the Committee was

traveling to Atlanta on Mondays then returning Thursday evenings. (Am. Compl. ¶ 10). Fromm was expected to fulfill her Committee duties as well as her regular FSM duties. (Am. Compl. ¶ 10). Fromm found this exhausting and shared this with her manager, Steve Jung. (Am. Compl. ¶ 10).

On June 11, 2017, Jung called Fromm to request that she open an investigation into a policy violation by Diane Ford. (Am. Compl. ¶ 11). Jung believed Ford engaged in union advocacy on an aircraft. (Am. Compl. ¶ 11). Fromm gathered statements from Ford and other crew members. (*See* Am. Compl. ¶ 12). "All statements from the flight crew . . . supported Ford." (Am. Compl. ¶ 16). Jung and Sarah Tronnes, base director, believed Ford's version of the incident. (Am. Compl. ¶ 14). As alleged by Fromm, "[t]here was no actual evidence or reason to believe Ford had done anything wrong . . . ." (Am. Compl. ¶ 16).

Fromm recommended "that Ford be issued an informal verbal coaching by documenting the conversation and providing [her] with a copy of the policy." (Am. Compl. ¶ 12). Delta's human resources representative, Linda Nimpson, ignored Fromm's recommendation and continued the Ford investigation "for weeks in violation of Delta policy that investigations be closed within 21 days." (Am. Compl. ¶ 13). Tronnes told Fromm in mid-July that "HR was intent on making an example of [Ford] and that she did not agree with what was happening to [Ford] and would not sign off on any discipline." (Am. Compl. ¶ 18). Fromm alleges there was "certainly nothing to warrant the level of punishment Delta was bringing against Ford." (Am. Compl. ¶ 16). Fromm was "especially concerned with Delta's punishment of Ford because it appeared baseless to

[her]. Ford was being disciplined based on verbal accusations from a younger flight attendant." (Am. Compl. ¶ 15). Fromm believes the accusing flight attendant was 23 years old. (Am. Compl. ¶ 15). Ford was 58 years old and had been a flight attendant for 31 years. (Am. Compl. ¶ 17). Fromm believes Ford was being targeted because of her age. (Am. Compl. ¶¶ 17, 67). Fromm asserts she "raised concerns about the punishment" of Ford. (Am. Compl. ¶ 67).

On July 17, 2017, Fromm was walking to a transport van and discussed the Ford matter with a Minneapolis-based flight attendant, Richard Schutz, because Schutz had noticed Fromm was upset about something. (Am. Compl. ¶ 19). Fromm "vaguely discussed that there had been some performance development discipline matter that [she] had been asked to give to a member of her team and that she did not agree with it." (Am. Compl. ¶ 20). "At no time did [Fromm] give [Ford's] name during this discussion . . . ." (Am. Compl. ¶ 20).

On July 24, 2017, Fromm met with Jung before returning to Atlanta. (Am. Compl. ¶ 21). Jung questioned Fromm about her July 17 conversation with Schutz. (Am. Compl. ¶ 22). Shannon Brown,[1] base manager, was present for the meeting and took notes. (Am. Compl. ¶ 22). Fromm stated she could not remember the specific conversation because "she had 8 van trips each week." (Am. Compl. ¶ 23). Fromm was informed that a director from another department had been riding the van and overheard Fromm's conversation with Schutz. (Am. Compl. ¶ 24). Specifically, the director overheard Fromm "expressing

---

[1] Fromm does not provide Shannon's full name in her Amended Complaint. This Court assumes it is "Shannon Brown" based on the email recipients of Fromm's July 24, 2017 written statement. (Decl. of Jolynn Markison, Ex. 1, ECF No. 30).

her disagreement regarding some performance development matter that her leadership had issued." (Am. Compl. ¶ 24). Fromm "did not realize [Jung and Brown] were discussing the conversation she had with [Schutz] while walking to the van." (Am. Compl. ¶ 25). Fromm was asked to write a statement regarding her version of the story and was told to go home. (Am. Compl. ¶ 26). In her statement emailed on July 24 to Jung, Brown, and Tronnes, Fromm reiterated that she did not remember the conversation referenced. (Markison Decl. Ex. 1).[2]

Fromm returned on July 26, 2017 for "further questioning and was suspended without pay and asked to go home and again write another statement." (Am. Compl. ¶ 27). At some unspecified date later than July 26, Fromm met with Tronnes and Nimpson and

> was told during the conversation she had with [Schutz] she allegedly stated she disagreed with the discipline her leaders wanted to give to her team member and specifically named [Tronnes] and [Brown] as being the leaders that she did not agree with and further asked [Schutz] not to say anything to anyone.

(Am. Compl. ¶ 28). Fromm's second statement, emailed on August 4, 2017 to Tronnes and Nimpson, indicated that the information provided that day had "helped jog [her] memory a bit." (Markison Decl. Ex. 2). Fromm admitted she shared concerns with

---

[2] When analyzing a motion to dismiss, the court is ordinarily confined to the pleadings. Fed. R. Civ. P. 12(d) (a Rule 12(b)(6) motion to dismiss is converted to a Rule 56 summary judgment motion if matters outside the pleadings are considered). A court may, however, consider materials that are part of the public record, do not contradict the complaint, or are necessarily embraced by the pleadings without converting the motion to dismiss into a motion for summary judgment. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted). Fromm's Amended Complaint necessarily embraces her two written statements. (Am. Compl. ¶¶ 26, 27). As such, this Court will consider them herein.

Schutz. (Markison Decl. Ex. 2). Fromm denies ever mentioning Ford, Brown, or Tronnes by name and also denies asking Schutz not to tell anyone. (Am. Compl. ¶ 29).

On August 16, 2017, Fromm met with Ravi,[3] Tronnes,[4] and Nimpson. (Am. Compl. ¶ 30). Nimpson appeared via speaker phone. (Am. Compl. ¶ 30). Fromm was terminated by Delta. (Am. Compl. ¶ 30). Delta's proffered reason for firing Fromm was a violation of its policy related to leader confidentiality. (Am. Compl. ¶ 31).[5]

Fromm asserts the policy violation was a pretext to terminate her based on her age. (Am. Compl. ¶¶ 31–32, 44, 68).[6] Fromm asserts because she "had not specifically stated Diane Ford's name nor the names of the leaders whose decision [she] disagreed with," the only remaining reason for her termination was because she was 68 years old. (Am. Compl. ¶ 32). Fromm asserts she had an "exceptional work record," "never violated any Delta policies," and "had a great reputation with her customers." (Am. Compl. ¶ 44).

At some point prior to Fromm's termination, Tronnes asked Fromm if she "would mover her office to the back hall, which was commonly known by many employees at the base as 'retirement row.'" (Am. Compl. ¶ 46). There "was a clear age disparity between the back and front areas. Most workers in the back area were older and most workers in

---

[3] Fromm does not provide Ravi's full name or position with Delta in her Amended Complaint.

[4] This Court can only assume that the "Sara" referred to in Paragraph 30 is Sarah Tronnes because there is no other Sara or Sarah mentioned in the Amended Complaint.

[5] Delta provided various policies, (Markison Decl. Ex. 3), but they are unnecessary for full consideration of Fromm's claims. Curiously, the only policy possibly related to the "leader confidentially" provided states that "complaints of discrimination, harassment or retaliation" will be investigated in a manner "as discreet as circumstances permit. Information concerning such investigations will be communicated only to those who need to know such information." (Markison Decl. Ex. 3, at 3). There is no indication that Ford was being investigated for discrimination, harassment, or retaliation; thus, it would appear this policy is inapplicable.

[6] Fromm asserts Delta could hire "at least 3-4 first time FSM's for the same amount of money they were paying [her] yearly." (Am. Compl. ¶ 40).

the front area were younger." (Am. Compl. ¶ 46). "The more senior FSM's were moved to the back area so that the newer, younger FSM's could be in the front offices." (Am. Compl. ¶ 47). Fromm refused to move. (Am. Compl. ¶ 47). Additionally, Fromm "indicated numerous times that she was intent on working another five years." (Am. Compl. ¶ 47). Sometime prior to Fromm's termination, "many flight attendants had been asking [her] if she was planning on leaving. [Fromm] was told that a flight attendant named Mari Kluska said, '[Fromm] will not be in in-flight much longer.'" (Am. Compl. ¶ 54).

Fromm alleges that Delta employed approximately 12 FSMs in Minneapolis since its merger with Northwest. (Am. Compl. ¶ 48). The "majority" of the FSMs were over 40 years old. (Am. Compl. ¶ 48). Since the merger, "Delta demoted many of the FSM's [sic] through no fault or bad performance and replaced them with younger and inexperienced FSM's [sic]." (Am. Compl. ¶ 48). This made the majority of new FSMs under 40 years old. (Am. Compl. ¶ 48). Some of the new FSMs never served as flight attendants. (Am. Compl. ¶ 48).

Fromm provides anecdotes related to the other FSMs. Marie Smith, in her "late 50s or early 60s, was demoted by Delta due to poor performance. (Am. Compl. ¶¶ 49–50). Fromm, who was "very familiar with Smith's performance," "never saw the alleged poor performance claimed by Delta." (Am. Compl. ¶ 50). Charlotte Mattice, who was in her early to mid 70s, "felt the environment was toxic for older workers and told Fromm "she felt she would be next to be targeted because of her age," so she retired "because of her fear of being discriminated for her age." (Am. Compl. ¶¶ 49, 51). Dore Wagner, in

her early 60s, told Fromm she "left her FSM position at the base because she felt Delta was set on having younger people in the FSM role" and "no longer felt welcome in that position." (Am. Compl. ¶¶ 49, 52). Jason Pace, in his 50s, transferred to Fort Lauderdale, Florida "because he felt the environment in Minneapolis was hostile towards older workers." (Am. Compl. ¶¶ 49, 53). Fromm asserts three other FSMs—Roxanne Rif (mid 40s), John Rif (mid 40s), and Jeanenne Brown (early to mid 70s)—were demoted or transferred out of Minneapolis, but provides no further details. (Am. Compl. ¶ 49).

Fromm provides anecdotes related to other Delta employees she believes were treated unfairly due to their age. Tony Panza, a Delta worker in Minneapolis in his late 50s, "was falsely accused of violations." (Am. Compl. ¶ 64). Mary Jo Murphy, a 60 year-old Delta worker in Minneapolis, "was placed on 18 months probation for a third sick call, which is not a violation of Delta's policy." (Am. Compl. ¶ 65). Fromm asserts younger workers are not given probation for the same conduct as Murphy. (Am. Compl. ¶ 65). JoEllen Kodet, a Minneapolis Delta worker, was also placed on probation for sick calls, but was "so frightened by Delta's actions that she retired out of fear and intimidation." (Am. Compl. ¶ 66). Fromm provides various allegations gleaned from others' complaints with the EEOC or federal lawsuits. (Am. Compl. ¶ 43). There is no allegation these other persons ever worked in Minneapolis or interacted with Fromm in any manner. (*See* Am. Compl. ¶ 43).

Fromm asserts that the conduct for which she was fired "was not nearly as bad of conduct as that committed by younger and similarly situated workers in Minneapolis." (Am. Compl. ¶ 55). Fromm asserts none of these workers were terminated like her. (Am.

Compl. ¶ 55). Like with the older FSMs, Fromm provides anecdotes. A male FSM in his 30s "harassed a female flight attendant," the flight attendant complained to Delta, the male FSM was not punished or terminated but was transferred "to his desired location in Hawaii." (Am. Compl. ¶ 56). A male FSM "violated multiple Delta policies," such as giving preferential scheduling treatment to some flight attendants, but was not punished or terminated. (Am. Compl. ¶ 57). That same male FSM divulged confidential information but was not terminated. (Am. Compl. ¶ 57). A female FSM disclosed confidential information while drinking alcohol on a trip to Amsterdam; she was not terminated but promoted instead. (Am. Compl. ¶ 58). That same female FSM "was so inebriated at a work event that she was forced to leave the restaurant," in "full view of base management." (Am. Compl. ¶ 59). She was not punished. (Am. Compl. ¶ 59). A male FSM in his 20s "received many infractions" but has not been terminated. (Am. Compl. ¶ 60). A different male FSM in his 20s had "very poor performance" but was not terminated. (Am. Compl. ¶ 61). A female FSM "received many complaints from flight attendants for being rude and disrespectful" but had not been terminated. (Am. Compl. ¶ 62). Fromm is "also aware of several FSM's [sic] dating flight attendants," and they "regularly discuss confidential information with their spouses but are not punished." (Am. Compl. ¶ 63).

Fromm provides various public statements from Delta in her Amended Complaint. Delta has stated "it is turning its attention to millennials." (Am. Compl. ¶ 34). Delta's CEO, Edward Bastian, has said that by 2020, half of Delta's customers will be millennials and its employees will mirror that balance. (Am. Compl. ¶ 34). Bastian stated

in a 2016 interview that Delta's employees are becoming younger and that Delta has to keep its product and service offerings "fresh." (Am. Compl. ¶ 36). Delta's website, DeltaNet, highlighted its commitment to hiring young American workers for the "First Job" initiative. (Am. Compl. ¶ 37). In 2017, Delta related a reality show entitled "Earning Our Wings" about persons becoming flight attendants. (Am. Compl. ¶ 41). Fromm believes this show was aired to "attract younger 'millennial' employee applicants." (Am. Compl. ¶ 41).

Fromm filed a charge of discrimination with the EEOC in May 2018. (Am. Compl. ¶ 69; Markison Decl. Ex. 4).[7] Fromm asserted discrimination based on age; claiming she was subjected to differential treatment by being held to different standards than younger employees. (Markison Decl. Ex. 4). Fromm's age discrimination claim rested on the ADEA. (Markison Decl. Ex. 4). The EEOC provided Fromm a right-to-sue letter. (Am. Compl. ¶ 69; Markison Decl. Ex. 5).

Fromm then brought the instant suit. Delta moved to dismiss, (ECF No. 13), and Fromm amended her complaint in response, (ECF No. 24). Fromm's Amended Complaint asserts five claims for relief: Count I alleges age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); Count II asserts a violation of the Minnesota Human Rights Act ("MHRA"); Count III alleges a hostile work environment; Count IV asserts a violation of Title VII; and Count V claims wrongful termination in violation of public policy. (Am. Compl. *passim*). Delta then withdrew its previous motion

---

[7] The EEOC file constitutes a public record that the Court can consider alongside the pleadings at the motion to dismiss stage. *Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011).

to dismiss aimed at Fromm's original complaint, (ECF No. 34), and moved to dismiss Fromm's Amended Complaint, (ECF No. 28).

In her responsive brief, Fromm withdrew her Title VII claim without prejudice. (ECF No. 36, at 22). Fromm also clarified that she was asserting a claim for disparate treatment under the ADEA, not a claim for disparate impact. (ECF No. 36, at 22). Delta pointed out that Fromm argued a retaliation claim in her opposition briefing but that no such claim was pled in Fromm's Amended Complaint. (ECF No. 42, at 6–8; *see* ECF No. 36, at 21–22; ECF No. 39-1).[8] At the hearing, Fromm withdrew her Title VII claim and retaliation arguments with prejudice. (*See* ECF No. 44). Thus, all that remains are Counts I and II for age discrimination, Count III for hostile work environment, and Count V for wrongful termination.

## II.   ANALYSIS

### A.  Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sletten & Brettin Orthodontics v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). Facial plausibility of a claim exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Although a sufficient

---

[8] Generally, a complainant must file a charge of discrimination with the EEOC in order to assert it in a federal lawsuit. *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 630 (8th Cir. 2000). Fromm's EEOC charge only contained an age discrimination claim, no retaliation claim was asserted. (Markison Decl. Ex. 4).

complaint need not be detailed, it must contain "[f]actual allegations . . . enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted); *see id.* ("The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion of a legally cognizable right of action.") (quotations and citation omitted). Additionally, complaints are insufficient if they contain "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

When considering a 12(b)(6) motion, if the court considers matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The court may, however, consider materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted).[9]

## B. Age Discrimination under the ADEA and MHRA

The ADEA prohibits discrimination against employees, age 40 and over, because of their age. *Rahlf v. Mo-Tech Corp., Inc.*, 642 F.3d 633, 636–37 (8th Cir. 2011) (citing 29 U.S.C. §§ 623(a)(1), 631(a)). "Like the ADEA, the MHRA prohibits discrimination against an employee based on age." *Rahlf*, 642 F.3d at 636 n.2; MINN. STAT. § 363A.08, SUBD. 2. "In analyzing cases under the MHRA, the state courts apply the principles

---

[9] Without any legal support or argument, Fromm asserts the exhibits Delta submitted alongside its motion to dismiss should be stricken. (ECF No. 36, at 22.) For the reasons stated above, *supra* notes 2, 7, the EEOC file is a public record and Fromm's written statements are embraced by the pleadings. As such, Fromm's request is denied with respect to those documents. Delta's policies are unnecessary for the consideration of the pending motion. *Supra* note 5.

developed in the adjudication of claims under Title VII because of the substantial similarities between the two statutes." *Hanenburg v. Principal Mut. Life Ins. Co.*, 118 F.3d 570, 574 (8th Cir. 1997). Thus, courts analyze MHRA claims using the same standards applicable to claims under the federal ADEA. *Chambers v. Travelers Cos., Inc.*, 668 F.3d 559, 566 (8th Cir. 2012); *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1152 (8th Cir. 2007).

To establish a prima facie case for age discrimination, Fromm must show: (1) she is over 40 years old; (2) she met the applicable job qualifications; (3) she suffered an adverse employment action; and (4) that age was a factor in Delta's decision to terminate her. *Ward v. Int'l Paper Co.*, 509 F.3d 457, 460 (8th Cir. 2007). While a plaintiff need not necessarily plead facts sufficient to establish a prima facie case at the pleading stage, the elements of the prima facie case are not irrelevant to a plausibility determination in a discrimination suit. *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (discussing *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002)). The elements of a prima facie case are "part of the background against which a plausibility determination should be made," serving as a "prism to shed light upon the plausibility of the claim." *Blomker*, 831 F.3d at 1056 (quotations omitted).

There is no dispute that Fromm is over 40 years old; she was 68 years old when terminated by Delta. There is no dispute that Fromm met the applicable job qualifications; she was employed as an FSM for 11 years preceding her termination and was chosen to serve on Delta's 2017 Chairman's Club Committee, signifying an ability to meet her job duties. Nor is there any dispute that she suffered an adverse employment

action by being terminated in August 2017. *See Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 926 (8th Cir. 2007) (termination constitutes an adverse employment action). The dispute between the parties is whether Fromm has properly pled that age was a factor in Delta terminating Fromm.

A claim of disparate treatment under the ADEA requires the plaintiff to prove, "by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 180 (2009). Again, while the prima facie standard is an evidentiary standard, not a pleading standard, it sheds light on the plausibility of a claim. *Blomker*, 831 F.3d at 1056. Even though Fromm's Amended Complaint is stuffed with accusations that Delta, as a company, prefers younger workers and that various former employers claim they were discriminated against by their age, it is silent as to any non-conclusory allegation that any of the individuals involved in Fromm's termination made that decision based on Fromm's age.

Fromm was terminated by Delta on August 16, 2017 in a meeting with three Delta employees: Ravi, Tronnes, and Nimpson. Delta's proffered reason for Fromm's termination was a violation of its policy related to leader confidentiality. Fromm makes no allegation that the meeting included any age-based comments by Ravi, Tronnes, or Nimpson. Ravi appears nowhere else in Fromm's complaint so there are no allegations from which to attribute or infer *any* motive as relates to Ravi, let alone a but-for age-based motive. As to Tronnes and Nimpson, there are additional facts alleged in the complaint.

Fromm asserts Nimpson ignored her recommendation as to Ford and continued an investigation in violation of Delta policy. Nimpson, as the relevant human resources representative, was "intent on making an example" of Ford. Nimpson, like Tronnes and Ravi, was involved in Fromm's termination. There is no allegation that Nimpson made any age-based comments. Even though Fromm asserts Nimpson's investigation was age-based because she was investigating Ford due to a younger flight attendant's accusation, Fromm's allegations are only her beliefs; there is no allegation that Fromm raised any concerns about Nimpson's investigation, only the resulting punishment of Ford. Even if this Court were to infer age-based animus in the investigation of Ford, there is no allegation tying that investigation of Ford to Fromm's termination outside of Fromm's speculation.

Fromm alleges that Tronnes agreed with Ford's version of events. Fromm further alleges that Tronnes agreed that Delta was treating Ford harshly. Nevertheless, Tronnes, as Fromm's supervisor, appears to have directed Fromm, Ford's supervisor, to institute Delta's disciplinary action upon Ford. (*See* Am. Compl. ¶ 28). Far from supporting Fromm's allegations of age-based discrimination, Tronnes' *agreement* with Fromm's stance undercuts allegations that Tronnes acted with age-based animus in terminating Fromm.

The only portion of the complaint that could be construed as age-based with respect to Tronnes relates to Fromm's desk. At some unspecified point in time, Tronnes asked Fromm if she would move her desk to the back hall, an area popularly known as "retirement row." Fromm refused. Fromm does not allege any negative consequence for

her refusal. Even assuming the "retirement row" was purposeful as compared to a staff moniker, there are no allegations tying Tronnes' question or Fromm's refusal to move desks to Fromm's termination for an unrelated policy violation.

Whether looking at Ravi, Nimpson, and Tronnes together or separately, there is no allegation that age was the but-for reason for Fromm's termination. Fromm makes no allegation that anyone other than Ravi, Nimpson, and Tronnes was involved in the decision to terminate Fromm's employment.[10] Tying Tronnes' question about Fromm's desk placement, which took place at some unknown time before Fromm's termination, is simply not enough to state a claim for age discrimination that is plausible on its face. Nor is tying Fromm's suspicion that Nimpson's investigation was age-based to Fromm's termination. To infer age-based animus in Fromm's termination, let alone to infer that age was the but-for reason for Fromm's termination is not reasonable or plausible based on Fromm's pleadings. Fromm's complaint does not rise above the speculative level with respect to her age discrimination claims under the ADEA and MHRA.

Fromm makes heavy use of allegations by other former Delta employees, various public statements by Delta and its CEO, and anecdotes to assert that the stated reason for Fromm's termination—a policy violation—was pretextual. Citing no case law whatsoever, Fromm argues that the mere assertion of a pretextual termination necessarily requires her claims survive the motion to dismiss stage. Fromm's argument is misplaced.

---

[10] Jung, Fromm's direct supervisor, was involved in the investigation into Fromm's policy violation and directed Fromm's investigation into Ford's policy violation. There is no allegation Jung made any age-based comments and Fromm has not alleged Jung was involved in her termination in any manner.

"A plaintiff may also show pretext through 'comparator evidence,' which involves showing that a younger employee, similarly situated to plaintiff, was treated more leniently when he or she committed an infraction of comparable seriousness." *Lorenz v. Tyson Foods, Inc.*, 147 F. Supp. 3d 792, 800 (N.D. Iowa 2015) (citing *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1084–85 (8th Cir. 2013)). "[T]he individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000). The comparator employee must be substantially similar but need not be a clone. *Ridout*, 716 F.3d at 1085 (quoting *Chaney v. Planfield Healthcare Ctr.*, 612 F.3d 908, 916 (7th Cir. 2010)). Nevertheless, the test in determining similarly situated employees is "rigorous." *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 956 (8th Cir. 2012).

Fromm's pleading falls well short of alleging any valid comparators. Fromm does not allege that any of her comparators were subject to the same supervisors. While Fromm does assert several FSMs violated Delta policies but were not terminated, she fails to allege their ages. (*See* Am. Compl. ¶¶ 57 (preferential scheduling treatment, divulged confidential information; no age alleged), 58–59 (disclosed confidential information while drinking, inebriated at a work event; no age), 62 (rude and disrespectful; no age)). For the three FSMs with ages actually alleged, Fromm's allegations are extremely generic. One FSM in his 20s "received many infractions" while another had "very poor performance." (Am. Compl. ¶¶ 60, 61). These are generic, naked assertions that do not meet applicable pleading requirements.

Even assuming the other "younger" workers who violated Delta policies constitute workers under the age of 40—which is not necessarily a reasonable inference given Fromm's age in comparison—it is still difficult to find Fromm's allegation of pretext plausible given these naked assertions. Fromm alleges two younger FSMs divulged confidential information, but again there is no further support beyond these bare-bone allegations. Even assuming these two comparators committed an infraction of comparable seriousness to Fromm's, the complaint does not allege that these comparators engaged in the same conduct without any mitigating or distinguishing circumstances. A simple allegation that two younger FSMs divulged confidential information is just too broad and speculative to state a plausible claim that Fromm's termination was pretextual.

### C. Hostile Work Environment

A hostile work environment claim based on age requires Fromm to show: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment based on age; (3) the harassment affected a term, condition, or privilege of her employment; (4) Delta knew or should have known of the harassment; and (5) Delta failed to take proper action. *Rickard v. Swedish Match N. Am.*, 773 F.3d 181, 184 (8th Cir. 2014) (citations omitted). The final two prongs are unnecessary where a plaintiff's supervisor created the hostile environment. *Id.* at 184 n.2 (citing *Palesch v. Mo. Comm'n on Human Rights*, 233 F.3d 560, 566 n.5 (8th Cir. 2000)). As with Fromm's other age-based claims, there is no dispute that Fromm belongs to a protected group of persons over 40 years old.

As discussed above, Tronnes served as Fromm's supervisor. Tronnes asked Fromm, at some unspecified time in her employment as an FSM, if she would move her

desk to the back hall, an area known as "retirement row." Fromm refused. Even if asking Fromm to move her desk to the back of the office to be among other older workers constitutes aged-based harassment, Fromm cannot show it affected a term, condition, or privilege of her employment. Fromm refused and there is no allegation of an adverse consequence as a result of that refusal.

Fromm also alleges that she was asked by various flight attendants about her plans for retirement. The flight attendants would necessarily have been Fromm's subordinates given her position as an FSM. "Although retirement inquiries may be 'so unnecessary and excessive—that is, unreasonable—as to constitute evidence of discriminatory harassment,' asking a question about someone's retirement plans is not inherently discriminatory." *Doucette v. Morrison Cty., Minn.*, 763 F.3d 978, 986 (8th Cir. 2014) (quoting *Cox v. Dubuque Bank & Trust Co.*, 163 F.3d 492, 497 (8th Cir. 1998)). Thus, even assuming Delta knew of these questions from Fromm's subordinates, there is no allegation that the retirement inquiries were "unnecessary and excessive" nor that they affected a term, condition, or privilege of Fromm's employment. Moreover, there is no allegation that Fromm complained to Delta or Delta refused to end such inquiries by Fromm's subordinates.

Simply put, Fromm's pleading does not rise to the level of alleging a workplace "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotations omitted).

### D. Wrongful Termination

Minnesota state courts have "recognized a narrow common-law public-policy exception to the employment-at-will doctrine, allowing an employee to bring an action for wrongful discharge at common law only where 'a termination is the result of an employee's refusal to do an act that the employee, in good faith, believes to be illegal.'" *Burt v. Rackner, Inc.*, 902 N.W.2d 448, 453–54 (Minn. 2017) (quoting *Dukowitz v. Hannon Sec. Servs.*, 841 N.W.2d 147, 151 (Minn. 2014)); *Nelson v. Productive Alts., Inc.*, 696 N.W.2d 841, 846 (Minn. Ct. App. 2005) ("This common-law action . . . is limited to a refusal to participate in an activity that violates a law or promulgated regulation or rule."). Minnesota has not recognized "a broader cause of action that arises every time an employee's termination results from an employer's violation of a clear mandate of public policy." *Dukowitz*, 841 N.W.2d at 151–55 (declining to expand the scope of the public-policy exception to the employment-at-will rule); *Ford v. Minneapolis Pub. Sch.*, 874 N.W.2d 231, 233 (Minn. 2016) ("[W]e have never recognized a common law cause of action for wrongful discharge for an employee's *reporting* of violations of the law.") (emphasis in original).

Fromm does not allege she refused to do any act, let alone any illegal act. Fromm instead argues that she disagreed with Delta's punishment of Ford and that she raised concerns about Ford's punishment with her superiors. But disagreement with an act and reporting concerns do not amount to a refusal to commit such an act. The most Fromm did, based on her pleading, was "raise[] concerns about the punishment" of Ford. (Am.

Compl. ¶ 67). The Amended Complaint is wholly silent on Fromm's implementation of the discipline she was asked to perform.

Fromm's case is similar to *Doku v. Hemnepin Health Care Sys., Inc.*, 2009 WL 1586709 (D. Minn. June 4, 2009). Doku, a black man of Ghanaian descent, "complained to the IT Human Resources Manager that [the IT Director and Chief Information Officer] had discriminated against Doku based on race by giving the Acting IT Supervisor position to [a Caucasian man] without posting the vacancy." *Id.* at * 1. Doku alleges the Acting IT Supervisor who received the position then began harassing him by reviewing his performance four times in on year, reprimanding him for "chronic unsatisfactory job performance problems," and suspending him. *Id.* Doku asserted his work was reassigned to Caucasian or U.S.-born employees and that he was refused training on a replacement IT system. *Id.* Doku asserted he was terminated even though new workers were being hired and less-senior workers were being retained. *Id.* Doku asserted "a claim for wrongful termination in violation of public policy on the grounds that his termination was motivated by racial and national origin discrimination and by his complaint to his employers about discrimination." *Id.* at *2. Because Doku "d[id] not allege that he was terminated for refusing to participate in an activity that violated state or federal law," the court found he failed to state a claim for common-law wrongful discharge. *Id.* Like *Doku*, Fromm does not allege that she refused to participate in an activity that violated law. As such, her claim fails.

### E.  Leave to Amend

In a single sentence at the end of her opposition brief, Fromm requests leave to amend her Amended Complaint should the Court find it defective. (ECF No. 36, at 22).

Arguments or requests raised in a reply brief are not properly presented to the Court. *United States v. Griggs*, 71 F.3d 276, 282 (8th Cir. 1995). Even if Fromm's request were properly before the Court, it should be denied. Rule 15(a) provides that courts should "freely give leave" to amend a pleading before trial when "justice so requires." Fed. R. Civ. P. 15(a). Under the Local Rules, any motion to amend a pleading must be accompanied by the proposed amended pleading. D. Minn. LR 15.1(b). Leave to amend should not be given when there is "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. at 182 (1962).

Fromm provides no indication how she could amend her complaint for a second time to allege a claim that would survive. Ford, upon whom Fromm bases much of her complaint, was represented by the same attorneys and, like Fromm, failed to plead any claims that could withstand a motion to dismiss. *Ford v. Delta Air Lines, Inc.*, 2019 WL 2524772 (D. Minn. June 19, 2019) ("The court believes that any such amendment would be futile given that [Ford] has already filed two complaints and has yet to plead a cognizable claim."). This Court finds any amendment would be futile.

## III.   RECOMMENDATION

Based on the foregoing, and all the files, record, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss Amended Complaint, (ECF No. 28), be **GRANTED** and this matter be **DISMISSED WITH PREJUDICE** for the reasons stated herein.

Date: August 26, 2019                                        _s/ Steven E. Rau_
                                                             Steven E. Rau
                                                             United States Magistrate Judge
                                                             District of Minnesota

                                                             *Fromm v. Delta Air Lines, Inc.*
                                                             Case No. 18-cv-3197 (MJD/SER)

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).